IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**B&B HARDWARE, INC.**                                                    **PLAINTIFF**

v.                                         4:10CV00317-BRW

**FASTENAL COMPANY**                                                     **DEFENDANT**

## ORDER

Pending is Defendant Fastenal Company's Motion for Summary Judgment (Doc. No. 30). Plaintiff B&B Hardware, Inc. has responded,[1] and Fastenal has replied.[2] For the reasons set out below, the Motion is DENIED in part and GRANTED in part.

**I.    BACKGROUND**

In April 1999, the parties allegedly entered into a distribution agreement[3] under which B&B would sell, and Fastenal would purchase and resell, B&B's patented self-sealing fastener. The agreement prohibited Fastenal from marketing or selling "any product that is similar to or performs substantially the same function" as B&B's fastener without B&B's consent.[4] In its Complaint, B&B alleges that Fastenal marketed and sold fasteners that were not manufactured or provided by B&B, in violation of the parties' agreement. B&B asserts claims for (1) breach of contract, (2) breach of covenant of good faith and fair dealing sounding in contract, (3) tortious interference with business expectancy, and (4) violation of the Arkansas Deceptive Trade Practices Act.

---

[1] Doc. No. 37.

[2] Doc. No. 41.

[3] Fastenal denies that the distribution agreement at issue constitutes a valid contract with B&B (Doc. No. 23).

[4] Doc. No. 1-1, ¶ 23.

1

A disputed provision of the agreement provides:

**#15. Assignment; Change of Ownership.** Distributor [Fastenal] shall not transfer or assign this Distribution Agreement or its rights and obligations hereunder. Absent the written consent of B&B, this Agreement shall automatically terminate upon any change of more than 25 percent ownership interest in Distributor (by sale or other transfer of stock or otherwise).[5]

Relying on this provision, Fastenal contends that the agreement automatically terminated more than ten years ago. In support of its Motion for Summary Judgment, Fastenal offers documents purporting to show that, due to the volume of stock traded, Fastenal's ownership changed by the requisite 25% within weeks of the agreement being signed. Fastenal argues that the agreement automatically terminated before any alleged breach. In the alternative, Fastenal seeks partial summary judgment on B&B's claim for breach of the covenant of good faith and fair dealing sounding in contract.

## II.  STANDARD

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[6] The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[7]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should be granted only when the movant has established a right to the

---

[5]Doc. No. 1-1.

[6]*Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56.

[7]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

2

judgment beyond controversy.[8] Nevertheless, summary judgment promotes judicial economy by preventing trial when no genuine issue of fact remains.[9] I must view the facts in the light most favorable to the party opposing the motion.[10] The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.[11]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[12]

### III. DISCUSSION

#### A. The Automatic Termination Provision

The first issue is whether the automatic termination provision of the parties' agreement is ambiguous. Fastenal argues that the provision is unambiguous and must be interpreted to mean that the parties intended for *any* transfer of 25% of its stock (including many small sales of stock adding up to 25%) to trigger the automatic termination provision. On the other hand, B&B

---

[8]*Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[9]*Id.* at 728.

[10]*Id.* at 727–28.

[11]*Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273–74 (8th Cir. 1988) (citations omitted)).

[12]*Anderson*, 477 U.S. at 248.

argues that the parties intended the automatic termination to be triggered only upon a 25% change in a single transaction.

Under Arkansas law, whether a contract is ambiguous is a matter of law for the court to decide.[13] A contract is unambiguous and its construction and legal effect are questions of law when its terms are not susceptible to more than one equally reasonable construction.[14] "In determining whether a contract is ambiguous, the court begins with its plain language, construed in harmony with the plain and generally accepted meaning of the words used, with reference to all of the agreement's provisions."[15] The court may "acquaint itself with the circumstances surrounding the making of the contract."[16]

Fastenal argues that the automatic termination provision is perfectly clear and unambiguous. I disagree. Fastenal's repeated emphasis of the words "any change" seems to be misplaced. It is at least equally reasonable that the parties intended the word "any" to address the type of change of interest (by sale or other transfer of stock or otherwise), rather than the cumulative-versus-single-transaction issue that now presents itself. So, the agreement can be read to mean any *cumulative* change in ownership of 25% triggers automatic termination or that any *single* change in ownership of 25% invokes the automatic termination provision.

---

[13]*Vogelgesang v. U.S. Bank, N.A.*, 92 Ark. App. 116, 120 (2005).

[14]*Id.*

[15]11 Williston on Contracts § 30:5 (4th ed.); see also *Nat'l Am. Ins. Co. v. Hogan*, 173 F.3d 1097 (8th Cir. 1999) (stating that, under Arkansas law, a trial court may become acquainted with circumstances surrounding the making of a contract, and is obliged to determine whether extrinsic or parol evidence reveals latent ambiguity in language of agreement).

[16]*First Nat'l Bank of Crossett v. Griffin*, 310 Ark. 164, 169 (1992) ("Nor does the parol evidence rule prohibit the court's acquainting itself with the circumstances surrounding the making of the contract.").

Other terms of the contract indicate an expectation that the relationship between B&B and Fastenal would be long-standing. For example, the agreement states that Fastenal must provide an annual report of its net worth to B&B.[17] Even the 90-day with-or-without-cause termination provision,[18] which Fastenal points to in support of its position, seems to indicate a fairly long-term agreement—at least one that would last longer than 90 days. The parties were aware that Fastenal is a publicly traded company, and it makes little sense to think that they would enter into a contract that would automatically terminate upon such a non-event as 25% of its stock shares changing hands over a few weeks.

Considering the agreement and the general circumstances surrounding it, I find that the automatic termination provision is ambiguous. It is unclear what the parties meant by "any change of more than 25 percent ownership interest in Distributor (by sale or other transfer of stock or otherwise)" because there is more than one reasonable interpretation of that language. When a contract is ambiguous, parol evidence may be introduced to explain the writing.[19] Based on this ambiguity, a fact question is raised regarding the parties' intent and parol evidence is admissible to determine the meaning of the agreement's automatic termination provision.[20]

Summary judgment is DENIED on this ground.

### B.     Breach of Covenant of Good Faith and Fair Dealing

In the alternative, Defendant argues that summary judgment should be granted as to Plaintiff's claim for breach of the covenant of good faith and fair dealing sounding in contract. It

---

[17]Doc. No. 1-1, ¶ 8.

[18]*Id.* at ¶ 18.

[19]See, e.g., *Coble v. Sexton*, 71 Ark. App. 122, 125 (2000); *C. & A. Constr. Co., Inc. v. Benning Constr. Co.*, 256 Ark. 621, 622 (1974).

[20]*First Nat'l Bank of Crossett v. Griffin*, 310 Ark. 164, 169 (1992).

is settled law that no cause of action in *tort* for breach of duty of good faith exists in Arkansas (other than the tort of bad faith against insurance companies).[21] In *Preston v. Stoops*,[22] the Arkansas Supreme Court found it unnecessary to reach the issue of whether a cause of action for breach of the covenant of good faith and fair dealing would be recognized in *contract*.

To date, the Arkansas Supreme Court has not ruled on this issue. The federal courts that have considered it have overwhelmingly predicted that Arkansas would not recognized such a cause of action.[23] In keeping with these findings, B&B's claim for breach of covenant of good faith and fair dealing sounding in contract is DISMISSED. Nonetheless, Arkansas does allow juries to consider the covenant of good faith and fair dealing that is implied in every contract,[24] and B&B will be permitted to present proof on this point as appropriate.

## CONCLUSION

Based on the findings of fact and conclusions of law set out above, the Motion for Summary Judgment is DENIED in part and GRANTED in part. The stay of discovery[25] is lifted, and discovery should proceed forthwith.

IT IS SO ORDERED this 3rd day of March, 2011.

/s/ Billy Roy Wilson
UNITED STATES DISTRICT JUDGE

---

[21]*Country Corner Food and Drug, Inc. v. First State Bank and Trust Co. of Conway, Ark.*, 332 Ark. 645, 656 (1998) (declining to recognize new tort of breach of implied covenant of good faith and fair dealing).

[22]373 Ark.591 (2008).

[23]See *Williams v. State Farm Mut. Auto. Ins. Co.*, No. 5:10CV00032-JLH, 2010 WL 2573196, at *4 (E.D. Ark. June 22, 2010) (collecting cases). Cf. *All-Ways Logistics, Inc. v. USA Truck, Inc.*, No. 3:06CV00087-SWW, 2007 WL 1965415, at *13 (E.D. Ark. July 2, 2007) (finding claim for breach of implied duty of good faith actionable).

[24]AMI Civ. 2426 (2010).

[25]Doc. No. 35.