**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**


B&B HARDWARE, INC.                                          PLAINTIFF


V.                           NO. 4:10CV00317 BRW/JTR


FASTENAL COMPANY                             DEFENDANT


## <u>ORDER</u>

### I.  Introduction

On April 29, 2001, Plaintiff, B&B Hardware, Inc. ("B&B"), filed a Motion to Compel (docket entry #63) requesting the Court to order Defendant, Fastenal Company ("Fastenal"), to "meet its discovery obligations."  Specifically, B&B requested the Court to require Fastenal to: (1) respond to B&B's Requests for Admissions served on April 4, 2011 (Ex. 4 to Motion to Compel, docket entry #63-4); and (2) respond to B&B's Second Set of Interrogatories and Requests for Production of Documents served on April 6, 2011 (Ex. 5 to Motion to Compel, docket entry #63-5).  Additionally, B&B requested the Court "to conduct a hearing to determine what Fastenal has done to meet its obligation to produce responsive ESI [electronically stored information]"  and "strike Fastenal Company's answer for refusing to do what it was previously directed to do by this Court's Order of April 5, 2011."  (Docket

entry #63 at 3).

On May 9, 2011, United States District Judge Billy Roy Wilson referred B&B's Motion to Compel to the undersigned United States Magistrate Judge for disposition. (Docket entry #66).

Before reaching the merits of the Motion, it is important to frame the issues giving rise to this discovery dispute.

On November 9, 2010, the Court entered a Final Scheduling Order setting the case for a jury trial the week of August 30, 2011. (Docket entry #25). The "discovery cutoff" deadline was May 2, 2011 and the "dispositive motions" deadline was June 16, 2011. *Id.*

Generally, parties do not file dispositive motions until after all discovery has been completed and the facts are known. By giving the parties only 45 days after the discovery cutoff deadline to file dispositive motions, the Order clearly contemplated that the parties must serve their written discovery more then thirty days *before* the expiration of the discovery cutoff deadline so that the responding party could submit responses by May 2, 2011. After all, any other construction of the discovery cutoff deadline would inevitably jeopardize the June 16, 2011 dispositive motions deadline. Finally, this construction of the May 2 discovery cutoff deadline is consistent with the well understood practice followed by all of the Judges in the Eastern District of

Arkansas.

After receiving the Final Scheduling Order, B&B did not request guidance or clarification from Judge Wilson about whether its written discovery must be served thirty days or more before the May 2 discovery cutoff deadline or whether it could wait until May 2 to serve written discovery.

By March of 2011, it appears both sides had exchanged at least one set of interrogatories and requests for production of documents.[1]  B&B had begun to produce some documents to Fastenal in what it called "rolling discovery."  Fastenal also had begun to produce some documents to B&B.

On March 30, 2011, B&B's attorney wrote Fastenal's attorney to confirm the ongoing discussions between counsel "relating to Fastenal's discovery responses." (Ex. 3 to Motion to Compel, docket entry #63-3 at 1).  Two areas of potential dispute were identified: (1) while Fastenal "has produced documents and is continuing to review its ESI for additional responsive documents," B&B was "not clear on ... whether Fastenal has withheld or intends to withhold any responsive, non-privileged documents based on one or more of its asserted objections"; and (2) while Fastenal

---

[1]On January 17, 2011, Fastenal served its Answers to B&B's First Set of Interrogatories (Ex. 1 to Motion to Compel, docket entry #63-1) and Responses to B&B's First Set of Requests for Production of Documents.  (Ex. 2 to Motion to Compel, docket entry #63-2).

3

had confirmed that it was "in the process of identifying [ESI] responsive to B&B's discovery requests" (something B&B was also doing as part of "supplementing our document production on a rolling basis"), B&B "renew[ed] our offer to arrange for a meet and confer between our respective IT experts if that would be helpful to the process."[2]  (Docket entry #63-3 at 1-2).

On March 31, 2011, Judge Wilson held a telephone conference "to address discovery issues." It appears that B&B had noticed depositions of Fastenal's employees for April 5, 6, and 7 in Winona, Minnesota.  Fastenal objected to the depositions taking place without B&B providing it with copies of all documents B&B intended to use during the depositions. The Court ruled in favor of Fastenal and ordered B&B to provide Fastenal with copies of all of the requested documents by 3:00 p.m. on March 31. (Docket entry #46).

On April 1, 2011, Judge Wilson held another telephone conference "to address issues Fastenal raised about Plaintiff's compliance with the Court's March 31, 2011 Order." (Docket entry #48). After hearing arguments of counsel, Judge Wilson entered an Order on April 5, 2011 that: (1) postponed all of the depositions scheduled for April until after "the current May 2, 2011 discovery cutoff deadline"; and (2) ordered each party "*to complete its document production no later than May 2, 2011.*" *Id.*

---

[2]It appears no such meeting ever took place.

(Emphasis added). As of April 5, the parties had not taken any depositions.  Thus, both sides *knew* that, if they intended to take any depositions (something that most lawyers deem advisable before going to trial) Judge Wilson would also have to extend discovery well beyond the May 2 deadline.

On April 4, 2011, B&B served its "First Set of Requests for Admissions to Defendant." (Docket entry #63-4). On April 6, 2011, it served its "Second Set of Interrogatories and Requests for Production of Documents to Defendant." (Docket entry #63-5).  Because Fastenal's Responses were due *after* May 2, 2011, the discovery cutoff deadline, B&B knew or should have known that its discovery might be deemed untimely.  On April 13, 2011 Fastenal's attorney sent B&B's attorney an e-mail stating that "Fastenal objects to them [the April 4 and April 6 discovery] as untimely." (Docket entry #63-6 at 1).  A few hours later, B&B's attorney responded by noting that "there is no language in the order that would support Fastenal's position . . . ."[3]  *Id.*

On April 29, 2011, *three days before the May 2, 2011 deadline for Fastenal to*

---

[3]B&B's Arkansas counsel is a very experienced trial lawyer, who has regularly appeared in federal court in the Eastern District for over forty years.  While he is technically correct that Judge Wilson's Scheduling Order omitted the standard language making it explicit that, to be considered timely, written discovery must be served at least thirty days *before* the discovery cutoff deadline, he also undoubtedly knew that the well-established construction of such a discovery deadline required B&B's written discovery to be served on Fastenal on or before April 2, 2011.

*produce documents and five days before Fastenal was obligated to respond to B&B's*

*written discovery*, B&B filed the pending Motion to Compel (docket entry #63) and

supporting Brief (docket entry #64).[4]  In the opening sentence of its Motion, B&B

moves the Court "for an order compelling defendant Fastenal to meet its discovery

obligations and to comply with the Court's prior [April 5] order in this case." (Docket

entry #63 at 1).  Requesting a court to consider and resolve a clearly *anticipatory*

Motion to Compel might have given some attorneys pause, but not B&B's.  Instead,

they candidly and unabashedly admit in their supporting Brief that: "Because

Fastenal's time has not yet run for document production under this Court's order of

April 5, 2011, B&B cannot say with certainty the *extent* to which responsive materials

have not been produced."  (Docket entry #64 at 12) (Emphasis in original).

Three days later, on May 2, 2011, Fastenal produced approximately 31,000

pages of documents to go along with the 1,388 pages of documents it had previously

produced.  In doing so, Fastenal complied to the letter with Judge Wilson's April 5,

2011 Order.  (Docket entry #48).

On May 11, 2011, Fastenal filed its Response in Opposition to Motion to

---

[4]B&B refers to this pleading as a "*peremptory* motion to compel."  (Docket entry #70 at 1) (Emphasis added).  "Preemptive" is actually a better term for the motion, since it suggests it can be used as a first strike weapon in scorched earth discovery.

Compel. (Docket entry #68).

On May 18, 2011, B&B filed: (1) a Reply to Defendant's Response, along with numerous exhibits (docket entry #70); and (2) a supporting Brief (docket entry #71).

On May 19, 2011, Fastenal filed a Supplemental Response in Opposition to Motion to Compel, which included an attached affidavit from Jeff Wood, an IT specialist at Mitchell, Williams, Selig, Gates & Woodyard, PLLC ("the Mitchell firm"). (Docket entry #72).

On May 20, 2011, B&B filed a Supplemental Reply to Defendant's Supplemental Response to Motion to Compel. (Docket entry #73).

On May 23, 2011, Fastenal filed an "Additional Response in Opposition to Plaintiff's Motion to Compel." (Docket entry #74).

To put an end to this madness, on May 24, 2011, the Court ordered the parties to cease filing pleadings concerning B&B's Motion to Compel.  (Docket entry #77).

## II.  Discussion

### A.    B&B's Motion to Compel

B&B's attorneys *knew*, after receiving Judge Wilson's April 5 Order, that: (1) Fastenal had until "no later than May 2, 2011 to complete the production of its documents"; and (2) the May 2, 2011 discovery cutoff deadline would have to be extended to allow the parties to take depositions.  Judge Wilson's Order *obligated*

7

B&B's attorneys to wait until May 2 to review the documents produced by Fastenal and then determine if there were areas of disagreement regarding what Fastenal had produced. If areas of disagreement were identified, Rule 37(a)(1) of the Federal Rules of Civil Procedure *obligated* B&B's attorneys to confer with Fastenal's attorneys about the specific areas of disagreement, *before it filed a motion to compel*, "in an effort to obtain it [the discovery] without court action." Local Rule 7.2(g) of the United States District Court for the Eastern District of Arkansas also *obligated* B&B's attorneys to "confer[] in good faith on the specific issue or issues in dispute" *before filing a motion to compel*. Finally, both Rule 37(a)(1) and Local Rule 7.2(g) *explicitly required* B&B's attorneys to certify and state in the motion to compel that they had "conferred in good faith on the specific issues or issue in dispute" with Fastenal's attorneys and that they were not able to resolve their disagreements without the intervention of the Court. Finally, Local Rule 7.2(g) explicitly provides that "*if a motion to compel lacks such a statement, that motion may be dismissed summarily for failure to comply with this rule.*" (Emphasis added).

Rather than abiding by the clear language of Judge Wilson's April 5 Order, and complying with their obligations under Rule 37(a)(1) and Local Rule 7.2(g), B&B's attorneys took the extraordinary step of filing an *anticipatory or preemptive* Motion to Compel which accuses Fastenal of failing "to meet its discovery obligations"

8

several days *before* Fastenal was obligated to do so![5]  Furthermore, contrary to both

Rule 37(a)(1) and Local Rule 7.2(g), B&B's attorneys did not confer in advance with

Fastenal's attorneys about their intention to file the preemptive motion to compel and

attempt to resolve the specific issues in dispute before resorting to the Court for

assistance.[6]  Similarly, B&B's Motion to Compel does *not* contain either the

certification required by Rule 37(a)(1) or the mandatory statement required by Local

Rule 7.2(g).[7]

The language in Rule 37(a)(1) and Local Rule 7.2(g) was put there for an

important reason: to require lawyers to make a good faith effort to work out their

---

[5]Unlike Carnac the Magnificent, lawyers are not licensed to read minds.

[6]While B&B's attorneys exchanged some e-mails and correspondence with Fastenal's attorneys regarding potential discovery problems, it was sent two to four weeks before B&B filed its Motion to Compel; the communications contained only a generalized discussion of potential discovery problems; and, most importantly, the communications failed to state that, if the parties could not resolve the problems, B&B intended to file a Motion to Compel, thereby triggering the need for the attorneys to meet or at least confer in an effort to resolve the problem.  These e-mails and letters in no way satisfied B&B's obligations under Rule 37(a)(1) and Local Rule 7.2(g).

[7]In B&B's Reply to Defendant's Response to Plaintiff's Motion to Compel, it argues that it "was incumbent upon B&B to file a peremptory motion to compel" because "if B&B had not filed its motion to compel when it did, it would have risked losing the opportunity to have the issues raised in that motion heard by this Court." (Docket entry #70 at 1).  Clearly, B&B would have had *ample opportunity* to file its Motion to Compel on May 3, 4, or 5, etc.  The Court has no idea of the so-called "opportunity" B&B was at risk of losing if it had waited until after May 2 to file its motion and, by doing so, allowed Fastenal the time specified in the Court's April 5 Order and Rules 33 and 34 of the Federal Rules of Civil Procedure.

discovery problems *before* seeking judicial assistance.  B&B's Motion to Compel fails to comply with the requirements of Rule 37(a)(1), Local Rule 7.2(g), and the Court's April 5 Order.  Accordingly, the Motion to Compel is summarily denied.[8]

## B.   Areas of Disagreement That Remain To Be Addressed

In its Motion to Compel, B&B requests the Court to conduct "a hearing to determine what Fastenal has done to meet its obligations to produce responsive ESI . . . ." (Docket entry #63 at 4).  Of course, B&B made this request *before* Fastenal: (1) timely produced approximately 31,000 pages of documents, much of which appears to be ESI;[9] and (2) described in its responses to B&B's Requests for Admissions and Second Set of Interrogatories and Requests for Production of Documents the methodology it used in providing B&B with ESI.[10]  Accordingly, at this time, there is no need for a hearing.

---

[8]In its April 29 Motion to Compel, B&B also requests the Court to order Fastenal to respond to its Requests for Admissions and Second Set of Discovery Requests, even though Fastenal responses were not due until May 6 or later.  On May 6, 2011, Fastenal waived the timeliness objection raised in its earlier e-mail to B&B's attorneys and responded to that written discovery. (Docket entries #70-3 and 70-4).  It is a colossal waste of client's money and this Court's time for B&B's attorneys to ignore their obligations under Rule 37(a)(1) and  Local Rule 7.2(g) and anticipatorily create discovery disputes where none may exist.

[9]*See* docket entry #70-3.

[10]In addition, in its Response to B&B's Motion to Compel, Fastenal elaborates on this methodology and how it was communicated to counsel for B&B.  *See* docket entry #68 at 4 n.1.

Finally, from the parties' salvoes of replies and sur-replies, two central discovery issues appear to be looming on the horizon.

First, without citing any authority, B&B claims that, in order for Fastenal to satisfy its ESI obligations, it must "forensically image" the computer hard drives of ten of Fastenal's employees.   According to the affidavit of Jeff Wood, a "bit-by-bit forensic image [is] focused upon extracting the *deleted* documents, records or other information that may still remain on a hard drive."[11]   (Docket entry #72-1 at 2) (Emphasis in original).  Relying on his two years of experience with the Mitchell firm, Mr. Wood, a non-lawyer, boldly expresses the legal opinion that "making of a bit-by-bit image is normally only required where allegations of internal data instruction are proven to a judge . . . ."  *Id.*  Finally, in its papers, Fastenal makes it clear that "forensic" imaging is considerably more expensive than standard imaging which only

---

[11]In B&B's "Supplemental Reply to Defendant's Supplemental Response to Motion to Compel," it argues that the submission of Mr. Wood's affidavit "runs afoul of the stern Arkansas rule against attorneys (and their law firm employees) testifying on contested evidentiary matters in court."  (Docket entry #73 at 4).  However, none of the Arkansas Supreme Court cases cited by B&B support its position.  Mr. Wood is an IT specialist at the Mitchell firm, not an attorney.  His affidavit addresses a discovery dispute which is a matter for the Court to decide, not a jury.  The Court is fully capable of recognizing the hearsay and opinion testimony contained in Mr. Wood's affidavit and discounting it accordingly.  However, there is nothing at all inappropriate about Fastenal's attorney's submitting Mr. Wood's affidavit.

B&B's states that, by submitting this affidavit, Fastenal's attorneys have run afoul of Model Rule of Professional Conduct 1.10(a).  That statement is uncalled for and *completely unwarranted*.

11

captures active or archived files and documents.  Neither side provides the Court with any case law or commentary to support their respective positions.

Based on its own research, it appears to the Court that parties routinely discharge their threshold ESI obligation by providing only standard imaging of their employees' hard drives.  If opposing counsel develops facts suggesting the other party or its employees have intentionally erased or destroyed ESI, they may request "forensic" imaging of hard drives and involve the Court if the opposing party refuses to provide it.  Additionally, if the party requesting the "forensic" imaging is willing to pay the additional expense, courts are more inclined to grant such a request.  Based on the current record, there appears to be no basis for B&B to seek to require Fastenal to "forensically" image the hard drives of the ten Fastenal employees identified by B&B.

Second, B&B claims that, in order to satisfy its ESI obligations, Fastenal must retrieve and search an enormous volume of data stored in a digital format on 1,182 backup tapes  maintained by Iron Mountain, a third-party data storage company. According to the affidavit of Mr. Wood, retrieving, decoding, searching, and reviewing the information on these backup tapes, for the ten individuals in question, would cost Fastenal $84,854,704.90. (Docket entry #72-1 at 5).  While this figure, on its face, seems absurdly high, there can be no question that retrieving, decoding, and

reviewing large volumes of information stored on digital backup tapes is extremely expensive.  After carefully reading Judge Holmes' decision in *Helmert v. Butterball, LLC*, 2010 WL 2179180 (E.D. Ark. May 27, 2010), it seems likely that Fastenal may very well be able to make the required showing that the backup tapes are not "reasonably accessible."[12]  Having now read many other cases involving efforts by parties to obtain information stored on digital backup tapes, it appears it may be very difficult for B&B to meet the seven-factor test for "good cause."  *See* Fed. R. Civ. P. 26(b)(2) Advisory Committee's Notes (2006 Amendment).

Finally, B&B argues that it is entitled to all of the above-described ESI because Fastenal waived its objections to producing the ESI by failing to assert "not reasonably accessible" and "no forensic imaging" as specific objections to B&B's First Requests for Production of Documents served in December of 2010.  However, as Fastenal points out, in its Response to that discovery it *repeatedly objected* to B&B's requests for documents on the ground that the requests were "overly broad and unduly burdensome." (*See* Ex. 2 to Motion to Compel, docket entry #63-2). That objection was certainly sufficient to place B&B on notice that Fastenal was objecting to the time and expense associated with producing the requested documents, the same

---

[12]As Judge Holmes notes in *Helmert*, "requested data maintained on backup tapes is typically classified as inaccessible." *Id.* at *8.

ground that lies at the heart of the "not reasonably accessible" and "no forensic imaging" objections. Finally, when B&B served its Second Set of Interrogatories and Requests for Production of Documents on April 6, 2011, it specifically asked Fastenal, in Interrogatory No. 18, if it contended that "B&B is not entitled to discovery of any of your ESI on the ground that the ESI is not reasonably accessible." (Docket entry #63-5 at 3). In response, Fastenal *explicitly asserted* the "not reasonably accessible data objection" based on the "1,200 off-site backup tapes consisting of 10 years of archived e-mail for the 10 Employees identified by Plaintiff . . . . " (Docket entry #70-3). Thus, the Court concludes that Fastenal sufficiently raised the "not reasonably accessible" and "no forensic imaging" objections in responding to B&B's First Requests for Production of Documents and its Second Set of Interrogatories and Requests for Production of Documents.

### III. Conclusion

It is past time for the lawyers for both sides to begin to act less like armed combatants and more like the highly skilled professionals I know them to be. If the parties find it necessary to involve the Court in future discovery disputes, counsel for both sides are warned that their motion papers should be devoid of any further sturm und drang.

IT IS THEREFORE ORDERED THAT B&B Hardware, Inc.'s Motion to

14

Compel (docket entry #63) is DENIED.

Dated this 25th day of May, 2011.

_____

UNITED STATES MAGISTRATE JUDGE